# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST INDUSTRIAL SUPPLY, INC | ) | CASE NO: 5:08 CV 1374 |
| | ) | |
| Plaintiff, | ) | JUDGE OLIVER |
| | ) | |
| vs. | ) | MAG. JUDGE BAUGHMAN |
| | ) | |
| SOILWORKS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER
VENUE AND CONSOLIDATE AND, IN THE ALTERNATIVE,
MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY**

---

Dockets.Justia.com

# TABLE OF CONTENTS

I.   SUMMARY OF THE ARGUMENT ...............................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED ..................................................................2

III. STATEMENT OF FACTS ........................................................................................2

    A.   Midwest has a  Federally Registered Trademark.....................................................2

    B.   Soilworks' Infringement of Midwest's Synthetic Organic Dust Control® Mark. . 3

    C.   Soilworks' Numerous Contacts with Ohio Establish Jurisdiction..........................4

    D.   Soilworks' Interactive Website Establishes Jurisdiction. .......................................4

    E.   The Arizona Action Does Not Involve Midwest's "Synthetic Organic Dust
        Control®" Mark .................................................................................................5

IV.  LAW AND ARGUMENT .......................................................................................6

    A.   Soilworks is Subject to Jurisdiction in Ohio..........................................................6

        1.   Standard of Review..........................................................................................6

        2.   This Court has Specific Personal Jurisdiction over Soilworks under
            Ohio Law. .......................................................................................................7
            a.   Soilworks has "transacted business" in Ohio.......................................8
            b.   Soilworks has caused tortious injury in Ohio. ..................................11

        3.   This Court has Personal Jurisdiction Over Soilworks under
            Federal Law. .................................................................................................12
            a.   Soilworks Purposefully Availed Itself of the Privilege of
                Acting in Ohio..................................................................................13
            b.   Midwest's Cause of Action Arises from Soilworks'
                Activities in Ohio..............................................................................14
            c.   Jurisdiction over Soilworks is Reasonable in this Case.....................15

        4.   In the Alternative, the Court Should Grant Midwest Additional Time to
            Conduct Discovery........................................................................................15

    B.   Midwest's Claim of Trademark Infringement is not a Compulsory      Counterclaim
        to Soilworks' Claim of Patent Noninfringement...................................................15

    C.   Midwest's Trademark Infringement Claim is Separate and Distinct from the
        Arizona Action.....................................................................................................18

    D.   Soilworks Should be Estopped from Arguing for a Change of Venue.................19

V.    CONCLUSION.................................................................................................................20

# **TABLE OF AUTHORITIES**

## **Cases**

*Akzona, Inc. v. E.I. du Pont de Nemours & Co.*,
    662 F.Supp. 603 (D. Del. 1987)............................................................ 18

*Alta Analytics, Inc. v. Muuss*,
    75 F.Supp.2d 773 (S.D. Ohio 1999) ..................................................... 11

*Audi AG v. D'Amato*,
    341 F.Supp.2d 734 (E.D. Mich. 2004)................................................... 10

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ................................................... 14, 15, 16

*Burger King, Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................. 14

*Calphalon Corp. v. Rowlette*,
    228 F.3d 718 (6th Cir. 2000) ................................................................. 6

*Compuserve, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) .................................................. 14, 15, 16

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
    109 F.3d 275 (6th Cir. 1997) ............................................................... 19

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993)............................................................... 18

*Goldstein v. Christiansen*,
    70 Ohio St.3d 232 (Ohio 1994) ............................................................. 8

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*,
    34 F.3d 410 (7th Cir. 1994) ................................................................. 12

*Inset Systems, Inc. v. Instruction Set, Inc.*,
    937 F.Supp. 161 (D. Conn. 1996)........................................................... 9

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................................. 13

*International Video Corp. v. Ampex Corp.*,
    484 F.2d 634 (9th Cir. 1973) ............................................................... 18

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*,
  53 Ohio St.3d 73 (Ohio 1990) ................................................. 8

*Maddox v. Kentucky Finance Co.*,
  736 F.2d 380 (6th Cir. 1984) ................................................. 17

*Moses v. Business Card Express, Inc.*,
  929 F.2d 1131 (6th Cir. 1991) ................................................. 21

*Nationwide Mut. Ins. Co. v. Tryg Int'l*,
  91 F.3d 790 (6th Cir. 1996) ................................................. 8

*Neogen Corp. v. Neo Gen Screening, Inc.*,
  282 F.3d 883 (6th Cir. 2002) ................................................. 14

*Panavision Int'l v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ................................................. 12

*Park Inns Int'l, Inc. v. Pacific Plaza Hotels, Inc.*,
  5 F.Supp.2d 762 (D. Ariz. 1998) ................................................. 9

*Polymer Indus. Products Co. v. Bridgestone/Firestone, Inc.*,
  211 F.R.D. 312 (N.D. Ohio 2002) ................................................. 17

*Rawe v. Liberty Mut. Fire  Ins. Co.*,
  462 F.3d 521 (6th Cir. 2006) ................................................. 19

*Scotts Co. v. Aventis S.A.*,
  145 Fed.Appx. 109 (6th Cir. 2005) ................................................. 7

*Smith v. Securities and Exch. Comm'n*,
  129 F.3d 356 (6th Cir. 1997) ................................................. 20

*Southern Machine Co. v. Mohasco Indus., Inc.*,
  401 F.2d 374 (6th Cir. 1968) ................................................. 13

*Telco Communications v. An Apple A Day*,
  977 F. Supp. 404 (E.D. Va. 1998) ................................................. 9

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ................................................. 6, 7

*U.S. v. Cinemark USA, Inc.*,
  66 F.Supp.2d 881 (N.D. Ohio 1999) ................................................. 20, 21

*Vivid Technologies, Inc. v. American Science Engineering, Inc.,*
    200 F.3d 795 (Fed. Cir. 1999) ................................................................. 18

*Welsh v. Gibbs,*
    631 F.2d 436 (6th Cir. 1980) ................................................................. 7

*World-wide Volkswagen v. Woodson,*
    444 U.S. 286 (1980) ................................................................................. 14

*Wuliger v. Positive Living Resources,*
    410 F. Supp.2d 701 (N.D. Ohio 2006) ..................................................... 8

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,*
    952 F.Supp. 1119 (W.D. Pa. 1997) ................................................... 14, 15

## **Statutes**

Fed.R.Civ.Pro. 13 ............................................................................................ 17

Ohio Rev. Code § 2307.382 .................................................................... 8, 11, 12

# I.    SUMMARY OF THE ARGUMENT

Plaintiff Midwest Industrial Supply, Inc. ("Midwest") submits this memorandum in opposition to *Defendant Soilworks, LLC's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and Consolidate (ECF Docket No. 6)* ("Motion to Dismiss"). Soilworks, LLC ("Soilworks") argues that Midwest's Complaint should be dismissed because (i) the Court lacks personal jurisdiction; (ii) the action is barred since it was a compulsory counterclaim in a preceding action in Arizona ("the Arizona Action");(iii) the action is duplicative, or, in the alternative, venue is appropriate in Arizona and the action should be consolidated with the current action between the parties in Arizona. Soilworks' arguments are without merit; its personal jurisdiction and compulsory counterclaim arguments are disingenuous at best, and Soilworks should be estopped from arguing a change in venue and consolidation with the Arizona Action.

First, this Court has personal jurisdiction over Soilworks because Soilworks (1) has sold its products to Ohio residents, (2) maintains an interactive website, and (3) has caused tortious injury to Midwest in Ohio. All three of the above factors are present in this case; however, even just one of the factors is enough to establish this Court's personal jurisdiction over Soilworks. Second, Soilworks' claim in the Arizona Action is a claim for a declaratory judgment of *patent* noninfringement and invalidity of one of Midwest's patents. Midwest's claim in this case is for *trademark* infringement and, thus, is not a compulsory counterclaim. Third, this case is not duplicative of the preceding action because the determination of the Arizona Action will not determine any of the legal issues or facts involved in this case. Finally, Soilworks is estopped

from arguing for a change of venue and consolidation since it opposed the consolidation of this case in the Arizona Action.  As a result, Soilworks' motion should be denied in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether this Court has personal jurisdiction over Soilworks, given that Soilworks has sold its products to Ohio residents, operates an interactive website accessible to Ohio residents, and has caused tortious injury in Ohio.

2.    Whether Midwest's trademark infringement claim is separate and distinct from the preceding Arizona Action because it is a claim for trademark infringement and the Arizona Action involves a declaratory judgment of patent noninfringement and invalidity of a Midwest patent.

3.    Whether issues of law and fact regarding Midwest's trademark infringement claim will remain after the determination of the Arizona Action.

4.    Whether Soilworks is estopped from arguing for a change of venue and consolidation because, in the Arizona Action, it argued against consolidation, and/or whether Soilworks has failed to show that the evidence strongly favors a transfer of venue to Arizona.

## III.    STATEMENT OF FACTS

### A.    Midwest has a  Federally Registered Trademark.

Midwest is an Ohio corporation with its principal place of business in Canton, Ohio. Midwest manufactures dust control, erosion control, soil stabilization, and anti-icing/de-icing products, which it sells under a variety of trademarks including the recently federally registered trademark "Synthetic Organic Dust Control®."  Midwest has cultivated substantial goodwill and a reputation for quality products throughout its thirty years in the industry.  (See Midwest's Complaint, ECF Docket No. 1)

On October 23, 2007, Midwest received a federal trademark registration on the Principal Register for "Synthetic Organic Dust Control®."  Midwest began using "Synthetic Organic Dust Control®" in July of 1998 and has used it exclusively until Soilworks began infringing on the mark to sell its products.  Midwest has invested considerable resources in developing goodwill in its "Synthetic Organic Dust Control®" trademark and in promoting its products throughout the United States.  As a result, an appreciable number of consumers have come to associate the "Synthetic Organic Dust Control®" mark with Midwest.  (Id.)

**B.**     **Soilworks' Infringement of Midwest's Synthetic Organic Dust Control® Mark.**

Soilworks is an Arizona limited liability company that maintains its principal place of business in Gilbert, Arizona.  (See Motion to Dismiss, p. 2.)  Soilworks sells chemical products for soil stabilization, dust control, and erosion control products.  (Id.)  Like Midwest, Soilworks sells its products nationally, including in Ohio.  Thus, Midwest and Soilworks compete with one another in the fields of dust control and soil stabilization products.  (See Midwest's Complaint)

Soilworks markets a dust control product, Durasoil®, in product literature, on the World Wide Web, and among other marketing channels.  Soilworks' Durasoil® product is the subject of this litigation.  Midwest markets several of its products, such as Envirokleen® and EK35®, using the mark "Synthetic Organic Dust Control®" in product literature, on the World Wide Web, and at tradeshows.  Despite Midwest's registration, Soilworks uses "Synthetic Organic Dust Control" on its website advertising and promoting its competing Durasoil® product.  In fact, Soilworks changed its website so that it would contain the mark "Synthetic Organic Dust Control" as a search term.  Soilworks uses and continues to use the term "Synthetic Organic Dust Control" in its advertising to trade on Midwest's goodwill.  (Id.)

### C.    **Soilworks' Numerous Contacts with Ohio Establish Jurisdiction.**

Soilworks has made numerous sales to Ohio companies since 2004, including a number of large sales to Battelle Memorial Institute in Columbus, Ohio and AEP Service Corporation in Canton, Ohio. (See Purchase Orders from Soilworks, attached as Exhibit 1.)[1] Soilworks also accepted credit applications and ran credit reports of many Ohio companies in order to extend to those companies a line of credit. (See Credit Applications and Reports from Soilworks, attached as Exhibit 2.) In addition to these sales and credit reports, Soilworks contacted and sent brochures to Ohio residents, as well as took out an advertisement in an Ohio-based magazine. (See E-mails, Faxes, and Contact Sheets from Soilworks, attached as Exhibit 3.) Finally, Soilworks admits to nine sales in Ohio in the year 2007 alone. (See Motion to Dismiss, p.2.)

### D.    **Soilworks' Interactive Website Establishes Jurisdiction.**

Soilworks operates a website at http://www.soilworks.com. (See Declaration of Anastasia J. Wade ("Wade Decl."), ¶ 4, attached as Exhibit 4.) The website contains information concerning all of Soilworks' products. The left side of the homepage contains a Table of Contents for Soilworks' website, including an "Online Shopping" link. (Id. at ¶ 5.) A person accessing the site can click on the link for "Online Shopping" and be transferred to a web page that sells samples of Soilworks' products. (Id. at ¶ 6.) Each of the samples has a product description and an "add to cart" button. (Id. at ¶ 6.) The "add to cart" button connects to the person's shopping cart. (Id. at ¶ 7.) At that point, the customer can check out and pay for the "sample" or can continue shopping. (Id. at ¶ 7.) To ease checkout, a person can also register their address and contact information and receive a username and password. (Id. at ¶¶ 7-8.)

---

[1] Exhibits 1-3 were received from Soilworks in response to discovery requests in the case of *Soilworks, LLC v. Midwest Industrial Supply, Inc.*, Ariz. Dist. No. 2:06-CV-2141. The discovery was not specifically aimed at Ohio sales and as a result, the documents are only a representation of the sales in Ohio.

Soilworks' contact information is also available on its website.  (Id. at ¶ 7; see also relevant website pages attached as Exhibit A to the Wade Decl.)

**E.**     **The Arizona Action Does Not Involve Midwest's "Synthetic Organic Dust Control®" Mark**

On September 7, 2006, Soilworks filed an action against Midwest in the United States District Court for the District of Arizona, captioned as *Soilworks, LLC v. Midwest Industrial Supply, Inc.*, Case No. 2:06-CV-2141.  The Arizona Action includes claims for (1) a declaratory judgment of no patent infringement; (2) a declaratory judgment that one of Midwest's patents is invalid; (3) false representation; (4) misappropriation of goodwill; (5) tortious interference with business relations, and (6) unfair competition and violations of Arizona common law.   In response, Midwest filed an Answer including counterclaims for trademark infringement of some of Midwest's registered trademarks, false designation of origin, unfair competition, false advertising, and declaratory judgment for validity and infringement of Midwest's U.S. Patent No. 7,081,270.  Midwest's registered trademark "Synthetic Organic Dust Control®" mark was not specifically included in the counterclaims as it was not federally registered until October 23, 2007, more than a year after Soilworks' Complaint was filed and well beyond the due date for amendments to the pleadings.

On March 26, 2008, after receiving a federal trademark registration for its "Synthetic Organic Dust Control®" mark, Midwest filed a motion for order to include its newly registered mark in its counterclaims based on notice pleading, *inter alia*.[2]   In the alternative, Midwest sought a motion for leave to amend the pleadings to include the "Synthetic Organic Dust Control®" trademark.  Soilworks vehemently opposed Midwest's motion as being untimely and without good cause, arguing that the "Synthetic Organic Dust Control®" mark was never in the

Arizona Action and that Soilworks would be prejudiced by its inclusion. (*See* Soilworks' Opposition to Defendant's Motion for Order ("Soilworks' Opposition"), attached as Exhibit E to Soilworks' Motion to Dismiss.) Based upon Soilworks' Opposition, the Arizona Court denied Midwest's Motion for Order, holding that the "Synthetic Organic Dust Control®" mark was not included in the Arizona Action and that Soilworks would be prejudiced by its inclusion. (*See* District Court of Arizona's Order, attached as Exhibit F to Soilworks' Motion to Dismiss.) Consequently, on June 6, 2008, Midwest initiated the current action in order to protect its intellectual property rights to its "Synthetic Organic Dust Control®" mark.

## IV.   LAW AND ARGUMENT

### A.   Soilworks is Subject to Jurisdiction in Ohio.

In its Motion to Dismiss, Soilworks erroneously asserts that this Court lacks personal jurisdiction over it. The evidence, however, demonstrates that this Court has personal jurisdiction over Soilworks, under both Ohio and federal law.

#### 1.   Standard of Review.

In order to determine whether jurisdiction over Soilworks exists, this Court must apply Ohio law, which employs a two-step test. First, the Court must determine whether Ohio's "long-arm" statute applies. Next, it must determine whether granting jurisdiction under that statute would deprive Soilworks of its right to due process of law under the Fourteenth Amendment to the United States Constitution. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

A plaintiff may satisfy this test by submitting affidavits and documentary evidence setting forth specific facts demonstrating that this Court has jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Here, because the Court has not scheduled an evidentiary hearing or authorized any discovery on the issue of jurisdiction,

---

[2] Midwest moved the District Court in Arizona for an order pursuant to Soilworks' insistence that the Synthetic

Midwest has a minimal burden of proof. *Id.* In fact, Midwest needs only to make a *prima facie* showing that personal jurisdiction over Soilworks exists in order to defeat dismissal. *Id.* That is, Midwest need only present some facts which can support a finding of jurisdiction. *Scotts Co. v. Aventis S.A.*, 145 Fed.Appx. 109, 112 (6th Cir. 2005) (citing *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)).

Further, in deciding whether this *prima facie* showing has been met, the Court must construe all pleadings, affidavits, and documentary evidence in a light most favorable to Midwest. *Theunissen*, 935 F.2d at 1459. In doing so, the Court may not consider any controverting assertions made by Soilworks, including those assertions set forth in the Declaration of Chad Falkenberg (which is attached as Exhibit A to Soilworks' Motion to Dismiss ("Falkenberg Decl."). *Id.*

Midwest has satisfied its burden of showing that the Court has jurisdiction over Soilworks and, accordingly, Soilworks' Motion to Dismiss must be denied.

### 2. This Court has Specific Personal Jurisdiction over Soilworks under Ohio Law.

First, Ohio's "long arm" statute provides for personal jurisdiction if either a defendant has transacted business in the State of Ohio or a defendant has caused tortious injury in the state through acts outside of the state:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

*** 

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

---

Organic Dust Control mark was not a part of the Arizona Action.

Ohio Rev. Code § 2307.382(A).

        *a.*        *Soilworks has "transacted business" in Ohio.*

The Ohio Supreme Court has held that the phrase "transacting business," as it is used in Ohio's long-arm statute, is to be interpreted broadly and includes deals, contracts, and negotiations. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (Ohio 1990); *Wuliger v. Positive Living Resources*, 410 F. Supp.2d 701, 705 (N.D. Ohio 2006). Specific jurisdiction may be based upon a single act of the defendant. *Wuliger*, 410 F.Supp.2d at 705; *see also, Nationwide Mut. Ins. Co. v. Tryg Int'l,* 91 F.3d 790, 794 (6th Cir. 1996). Additionally, personal jurisdiction does not require the defendant's physical presence in the state. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (Ohio 1994).

        *(i)*        *Soilworks' Sales in Ohio*

In this case, Soilworks has had numerous sales transactions in Ohio over the past few years while it was infringing on Midwest's trademark. Soilworks even admits to nine sales in Ohio in 2007 alone. (*See* Exhibit 1 and Soilworks' Motion to Dismiss, p. 2.) Upon information and belief, these sales included sales of the Soilworks' product Durasoil®, for which Soilworks infringes on Midwest's "Synthetic Organic Dust Control®" trademark to advertise and sell.

Soilworks has made repeated, continuous sales in Ohio over the last several years by selling its products, including its Durasoil® product directly at issue in this case, to Ohio residents. Some of Soilworks' sales to Ohio residents are included in Exhibit 1. As is shown, Soilworks has had numerous contacts with Ohio, including Durasoil sales to Battelle Memorial Institute (Bates Nos. 0013029, 0013006, totaling over $19,000; *see also,* sales to Southwest Putting Greens, Industrial Supply Co., AK Steel, Corporation, AEP Service Corp., DFAS

Columbus Center, *et al.*, Bates Nos. 002812, 0001434, 0011678, 0012114, 0024502, respectively). These sales alone establish personal jurisdiction over Soilworks in Ohio

*(ii) Soilworks' Interactive Website*

Soilworks is also subject to personal jurisdiction in Ohio due solely to its interactive website. A number of federal courts have held that the use of an interactive website can constitute "transacting business" under a state's long-arm statute. *See Telco Communications v. An Apple A Day*, 977 F. Supp. 404, 406 (E.D. Va. 1998) (soliciting investment banking business over website accessible to Virginia residents meets long-arm definition of doing business); *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 163-64 (D. Conn. 1996) (advertising continuously on website accessible in Connecticut satisfies Connecticut long-arm definition of doing business); *Park Inns Int'l, Inc. v. Pacific Plaza Hotels, Inc.,* 5 F.Supp.2d 762, 764 (D. Ariz. 1998) (operating interactive website accessible to Arizona residents and allowing hotel reservations to be made constitutes business activity sufficient to satisfy long-arm statute); *Audi AG v. D'Amato*, 341 F.Supp.2d 734, 744 (E.D. Mich. 2004) (operating a website selling email subscriptions and advertising space constitutes transacting business under Michigan long-arm statute despite no actual sales in Michigan).

Here, Soilworks has transacted business in Ohio by advertising and selling its products to Ohio residents through its interactive website. In its Motion to Dismiss, Soilworks argues, through the declaration of Chad Falkenberg, that its website is passive, containing only information regarding its products and providing samples upon request. (See Falkenberg Decl.) Mr. Falkenberg's declaration is inaccurate and simply a self-serving, unsupportable statement

that is directly contrary to the evidence attached to Exhibit 4.[3]  A closer look at Soilworks' website reveals that the website is interactive and constitutes transacting business in Ohio by offering to sell its product samples to Ohio residents through the internet.

Any user, including an Ohio resident, can click onto Soilworks' website-www.soilworks.com- and *purchase* a sample of Soilworks' products, including the product Durasoil®, the product with which Soilworks uses the mark Synthetic Organic Dust Control.  On the left side of the home page of Soilworks' website, users can find a Table of Contents for the site.  If a user clicks on "Online Shopping," he is directed to a webpage containing Soilworks' product "samples."  On this page, the user can purchase 1 liter, 5 gallon, 1 pound, or 55 pound samples of Soilworks' products.  The samples include the infringing product Durasoil®.  For each product, Soilworks sets forth a description followed by an "add to cart" button.  Once a user clicks on the "add to cart" button, the user is transferred to a webpage containing his shopping cart.  The webpage allows the user to "Update," "Clear Cart," "Checkout," or "Continue Shopping" by simple press of the corresponding buttons.  The accepted methods of payment are displayed at the bottom and include Visa, Mastercard, and American Express.  Online users can also register their names and addresses on the website to facilitate later purchasing.  Upon registration, the website grants them a user name as well as a password, with which they can use to login during their next visit.  (Copies of the relevant web pages as they appeared on August 4, 2008 are attached as Exhibit A to the Wade Decl.).

In light of the uncontrovertable evidence that Soilworks has sold its products in Ohio in the last year and that Soilworks advertises and sells its products to Ohio residents through its

---

[3] It is also worth noting that Mr. Falkenberg's declaration is carefully drafted by declaring the intent of Soilworks' website (¶7), the intent of Soilworks' products (¶10) and that Soilworks does not *specifically* target Ohio (¶8).  Of course, what it does not set forth is the fact that Soilworks does solicit Ohio residents, its website does provide for online purchases, and its products are sold within Ohio.

website, Soilworks has transacted business in Ohio, rendering the Court's exercise of personal jurisdiction over Soilworks appropriate pursuant to R.C. § 2307.382(A).

*(iii) Midwest's cause of action arises from Soilworks' transactions*

In addition, this Court must also consider both: (1) whether Soilworks' business transactions in Ohio have the necessary nexus to the matters at issue in this case; and (2) whether Midwest's causes of action arise from those transactions. *Alta Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 779 (S.D. Ohio 1999); *see also*, Ohio Rev. Code § 2307.382(A)(requiring a defendant's contacts to be related to the cause of action). Here, the required nexus exists between Soilworks' sales of its products and Midwest's claims of trademark infringement. Midwest has asserted claims for trademark infringement, violation of the Lanham Act, unfair competition, violation of the Ohio Deceptive Trade Practices Act, and unjust enrichment. These claims are based on the fact that Soilworks advertises and sells its Durasoil® product in Ohio by using and, hence infringing, Midwest's "Synthetic Organic Dust Control®" trademark. This has caused Midwest, an Ohio corporation, significant and irreparable injury. Since a substantial amount of Soilworks' infringing activities and the resulting injury occurred, and continue to occur, in Ohio, Midwest's claims arise, at least in part, out of Soilworks' forum-related activities.

        *b.*     *Soilworks has caused tortious injury in Ohio.*

In addition to having transacted business in this state under R.C. § 2307.382(A)(1), Soilworks has also caused tortious injury in Ohio. *See* R.C. § 2307.382(A)(6). The plain language of Ohio's long-arm statute is designed to bring within the jurisdiction of the Ohio courts any defendant that, through acts taken outside of Ohio, causes tortious consequences within the state. Based on that plain language, it is clear that Ohio's statute covers actions such as those committed by Soilworks.

Federal courts applying the tortious injury clause of a state's long-arm statute have consistently held that defendants are subject to personal jurisdiction if they cause tortious injury to plaintiffs present in the forum state, even if the defendants had no physical presence in the forum. This tortious injury includes infringement of the plaintiff's trademark. *See, e.g., Panavision Int'l v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998)(concluding that domain name infringement case is similar to a tort case and Illinois defendant's infringement was aimed at California plaintiff and caused injury in California); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410 (7th Cir. 1994)(observing that the injury from trademark infringement would be felt mainly in Indiana).

Here, Midwest is an Ohio corporation with its principal place of business in Canton, Ohio. (See Complaint, ¶ 1.) Soilworks has infringed Midwest's trademark in order to advertise and sell its Durasoil® product throughout the United States, including in Ohio. The effects of Soilworks' infringement will be felt by Midwest in Ohio. Thus, the injury from the infringement will be felt mainly in Ohio and Soilworks is subject to personal jurisdiction in Ohio courts.

### 3. This Court has Personal Jurisdiction Over Soilworks under Federal Law.

In addition to satisfying Ohio's long-arm statute, Midwest must also demonstrate that the exercise of jurisdiction comports with due process. Thus, Midwest must show that Soilworks has sufficient "minimum contacts" with Ohio such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Whether a defendant is subject to personal jurisdiction under federal law is determined by the three-part test set forth by the Sixth Circuit in *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Under the first prong, the defendant must purposefully avail itself of the privilege of acting in the forum state. *Id.* Second, the cause of action must arise from the defendant's activities in the state. *Id.* Finally,

the connection with the forum state must be substantial enough to make jurisdiction reasonable. *Id.* As set forth below, Midwest more than satisfies each prong of this test.

        a.        *Soilworks Purposefully Availed Itself of the Privilege of Acting in Ohio.*

"The purposeful availment requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State' and when the Defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *Compuserve, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)(quoting *World-wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). This requirement does not mean that the defendant must be physically present in the forum state. *Id.* at 1264.

The Sixth Circuit held that the operation of an internet website may establish purposeful availment. Specifically, a website can constitute purposeful availment "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). A defendant can specifically intend interaction with the residents of a state if it accepts their business through its website, allows them to register domain names, or grants them passwords to access its services. *Id.* and *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). S*ee also, Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1125-26 (W.D. Pa. 1997) (finding that conducting electronic commerce with residents of the forum state under the circumstances of that case constituted purposeful availment).

Similaraly, in the present case, Soilworks purposefully avails itself of the privilege of transacting in Ohio by advertising and selling its products through its interactive website to residents of Ohio and other states. Soilworks allow website visitors to register their contact

information and create a username and password.  Moreover, Soilworks has made a conscious decision to transact business in Ohio by accepting payments from Ohio residents and shipping products to consumers here.  In advertising and selling its products using Synthetic Organic Dust Control, Soilworks has infringed on Midwest's registered trademark causing its consumers to associate Soilworks' product with Midwest's products.  Accordingly, Soilworks cannot legitimately claim that it did not purposefully avail itself to the jurisdiction of this Court.

    *b.  Midwest's Cause of Action Arises from Soilworks' Activities in Ohio.*

  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."  *Bird,* 289 F.3d at 875 (quoting *Compuserve*, 89 F.3d at 1267).  Nonetheless, the cause of action need not formally arise from the defendant's contacts with the forum; rather, its must only have a substantial connection with the defendant's activities within the forum.  *Bird*, 289 F.3d at 875; *see, also, Zippo Manufacturing, Co.*, 952 F.Supp. at 1127 (holding that a cause of action for trademark infringement occurs where the passing off occurs and concluding that, because the defendant transmitted messages containing the alleged infringing material to be viewed by Pennsylvania residents on their computers, the cause of action arose out of the defendant's forum-related activities).

  Soilworks' contacts with Ohio consist of, *inter alia*, its numerous sales to Ohio residents and its interactive website through which it solicits and sells its products.  Soilworks solicits business and sells its products to Ohio residents using Midwest's Synthetic Organic Dust Control mark via its website.  Thus, Soilworks' contacts with Ohio, including its interactive website, are related to Midwest's claim of trademark infringement and the cause of action arises from Soilworks' activities in Ohio.

c.     *Jurisdiction over Soilworks is Reasonable in this Case.*

"An inference arises that the third factor is satisfied if the first two requirements are met." *Bird,* 289 F.3d at 875.   Factors considered in determining whether jurisdiction is reasonable include "the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolution of controversies." *Compuserve, Inc.,* 89 F.3d at 1268.

While Soilworks may face a burden in having to defend a suit in Ohio, it has the means necessary to assert such a defense in this state and its burden does not outweigh the other factors in favor of jurisdiction.  Ohio has a legitimate interest in protecting the business and intellectual property of its citizens, such as Midwest.  Midwest has an obvious interest in obtaining relief from Soilworks' continuing infringement of its trademark.  Finally, Ohio is the only state with an interest in this suit because Ohio is the only state in which this claim has been asserted. Therefore, the exercise of jurisdiction over Soilworks is reasonable, and Soilworks' motion to dismiss for lack of personal jurisdiction should be denied.

**4.     In the Alternative, the Court Should Grant Midwest Additional Time to Conduct Discovery.**

If, in spite of the uncontroverted evidence asserted by Midwest and the arguments stated above, the Court is unable to conclude that it has personal jurisdiction over Soilworks, Midwest requests an additional ninety days to conduct discovery limited to the issue of personal jurisdiction and to respond to Soilworks' Motion to Dismiss.

**B.     Midwest's Claim of Trademark Infringement is not a Compulsory Counterclaim to Soilworks' Claim of Patent Noninfringement.**

Rule 13(a) of the Federal Rules of Civil Procedure requires a party to assert as a counterclaim any claim which, at the time of the filing, arises out of the same transaction or occurrence as the opposing party's claim.  According to the Sixth Circuit, the inquiry to be

imposed in determining whether a claim is a compulsory counterclaim is "whether there is a logical relationship between the claim and counterclaim." *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 382 (6th Cir. 1984). Under the logical relationship test, "a court's inquiry is aimed at determining (1) whether issues of law and fact are common among the claims, and (2) whether substantially the same evidence would be used to support or refute the claims." *Polymer Indus. Products Co. v. Bridgestone/Firestone, Inc.*, 211 F.R.D. 312, 317 (N.D. Ohio 2002).

In its motion to dismiss, Soilworks inaccurately describes its claim in the Arizona Action as a claim for noninfringement. This characterization is misleading (at best) as it leaves out the most important element -- Soilworks' claim is for a declaratory judgment of *patent* noninfringement and *patent* invalidity. (See Soilworks' Complaint for Damages and Equitable Relief, ¶¶ 20-23, attached as Exhibit B to Soilworks Motion to Dismiss.) Soilworks' claims, therefore, necessarily deal with the law of *patents*, the chemical composition of its products as compared to Midwest's patent, and the issues of invalidity of Midwest's patent. The *only* compulsory counterclaim for a declaration of *patent* noninfringement is a claim of *patent* infringement. *See Vivid Technologies, Inc. v. American Science Engineering, Inc.,* 200 F.3d 795, 801-03 (Fed. Cir. 1999) (holding that a patent infringement counterclaim is compulsory in an action for declaration of patent noninfringement); *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 947 (Fed. Cir. 1993) (in a declaratory action for patent noninfringement, the defendant had to bring a counterclaim for patent infringement, or "be barred from doing so"); *International Video Corp. v. Ampex Corp.*, 484 F.2d 634, 635 (9th Cir. 1973) (recognizing a counterclaim for patent infringement is compulsory when declaratory judgment for patent noninfringement is sought); *Akzona, Inc. v. E.I. du Pont de Nemours & Co.*, 662 F.Supp. 603, 618 (D. Del. 1987) (in a declaratory action for noninfringement of several patents, a counterclaim for infringement of

the same patents "is clearly within the mandate of Rule 13(a)").  Hence, Midwest's claim for *trademark* infringement and related claims are not compulsory counterclaims to Soilworks' claim for a declaratory judgment of *patent* noninfringment and invalidity.

Second, the same evidence will not be used to support or refute the claims of Soilworks or Midwest.  Soilworks' claim for a declaration of patent noninfringement and invalidity involves legal and factual issues that are not remotely close to those involved in a claim for trademark infringement.  For example, patent infringement requires interpreting patent claim construction, usually through a *Markman Hearing,* and comparing the properly defined patent claims against an allegedly infringing product or method.  A declaration of patent invalidity requires review of prior art, or other evidence of invalidity, such as inequitable conduct by the patentee.  On the other hand, Midwest's claim for trademark infringement will involve the analysis of the eight (8) likelihood of confusion factors.  *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

Further, Soilworks has failed to cite a single case in which a court dismissed a trademark infringement claim because of a previously pled declaration of patent noninfringement or patent invalidity.  Accordingly, Midwest's claim for trademark infringement is not a compulsory counterclaim in the Arizona Action.

Finally, Soilworks, in its argument that Midwest's trademark infringement claim was a compulsory counterclaim in the Arizona Action, asserts that Midwest's unsuccessful Motion for Order to include its trademark "Synthetic Organic Dust Control®" in the Arizona Action should bar its claim for trademark infringement in this case.  In support of this assertion, Soilworks cites cases and secondary sources involving claim preclusion.  Claim preclusion requires a final decision on the merits before any subsequent claims can be barred.  *Rawe v. Liberty Mut. Fire*

*Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006). There is no final decision on the merits in the Arizona Action at the present time. Also, despite Soilworks contentions, Midwest could not have brought a federal trademark infringement action for its "Synthetic Organic Dust Control®" mark until it received its federal trademark registration for the mark. Therefore, Midwest's trademark infringement claim cannot be barred by the Arizona Action.

**C.      Midwest's Trademark Infringement Claim is Separate and Distinct from the Arizona Action.**

"When a federal court is presented with a duplicative suit, 'it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit.'" *U.S. v. Cinemark USA, Inc.*, 66 F.Supp.2d 881, 885 (N.D. Ohio, 1999) (quoting *Smith v. Securities and Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997)). A duplicative suit has "such an identity of issues 'that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* Further, even if this suit were duplicative, which it is not, the case law in the Sixth Circuit does not allow for a court to dismiss an action when faced with a duplicative suit. *Smith,* 129 F.3d at 361.

This action is not duplicative of the Arizona Action because the determination of the Arizona Action will still leave much to be determined in this case. Specifically, the Arizona Action involves patent infringement, patent invalidity, tortious interference with business relationships, false representation, unfair competition, and Midwest's counterclaims of trademark infringement of some of its trademarks. Although the Arizona Action includes Midwest's counterclaims for trademark infringement of some of its marks, it does not include such a claim as to the "Synthetic Organic Dust Control®" trademark at issue in this case. Midwest's "Synthetic Organic Dust Control®" mark is a completely different mark from the marks asserted in the Arizona action. The Arizona court will never determine whether Soilworks' use of

Midwest's "Synthetic Organic Dust Control®" mark constitutes trademark infringement. Thus, this action is not duplicative of the Arizona Action.

### D.     Soilworks Should be Estopped from Arguing for a Change of Venue..

In determining a motion for transfer of venue, the plaintiff's choice of forum is to be given great or substantial weight. *Cinemark USA*, 66 F.Supp.2d at 887. The defendant has the burden of demonstrating that the requisite factors strongly favor a transfer. *Id.* The requisite factors include the consideration of "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Id.* (quoting *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). These interests include the location of documents, convenience of witnesses, possibility of prejudice, and practical problems with trying the case. *Id.*

Midwest's choice of forum in Ohio should be given great and substantial weight in considering Soilworks' motion to transfer. Further, Soilworks has the burden of proving that the evidence strongly favors a transfer of venue in this case. Soilworks argues that the relevant documents are in Arizona, but ignores the fact that Midwest's relevant documents are located in Ohio at its corporate headquarters. Soilworks also argues that the parties and potential witnesses are already present in Arizona and would be forced to travel to Ohio to offer the same evidence. Soilworks, however, overlooks the fact that the Arizona Action involves a number of issues, including patent infringement and tortious interruption of business, while this action involves a single issue - trademark infringement. Therefore, most of the witnesses involved in the Arizona Action will not be involved in this action. Moreover, several key witnesses are located in Ohio, namely Midwest's corporate officers and other Midwest witnesses. Finally, Soilworks has not

argued that it faces the possibility of prejudice in this forum. As is evident, consideration of all of the factors demonstrates that Soilworks has failed to prove that the factors favor, let alone *strongly* favor, a transfer of venue.

Soilworks also asks this Court to, after transferring the case to Arizona, consolidate it with the Arizona action. This requested relief is disingenuous at best since Soilworks argued against the inclusion of "Synthetic Organic Dust Control®" in the Arizona Action. Now, it seeks to include it in the Arizona Action. Since Soilworks argued against the inclusion of the mark in the Arizona Action, Soilworks should be estopped from arguing for a change of venue and consolidation.

Further, the District Court of Arizona has already ruled on this issue and declared that the trademark "Synthetic Organic Dust Control®" is not an issue in the Arizona action based upon Soilworks' arguments against inclusion. Therefore, Soilworks should be estopped from arguing for consolidation and a transfer of venue and, at the very least, Soilworks' motion to transfer venue and consolidate this case with the Arizona Action should be denied.

## V.     CONCLUSION

Based on the foregoing, this Court should deny Soilworks' Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and Consolidate. In the alternative, the Court should grant Midwest an additional ninety days to conduct discovery and respond to Soilworks' Motion to Dismiss.

## PAGE LIMIT CERTIFICATION

Pursuant to L.R. 7.1(f), the undersigned counsel hereby certifies that this case was assigned by the Court to the Standard Track and that this Memorandum complies with the page limit requirements set out in the local rule.

Respectfully Submitted,


/s/ John M. Skeriotis
John M. Skeriotis (0069263)
jms@brouse.com
Craig A. Marvinney (0004951)
cam@brouse.com
BROUSE MCDOWELL
388 S. Main St., Suite 500
Akron, Ohio 44311-4407
Tel:  (330) 535- 5711
Fax: (330) 253-8601

1001 Lakeside Ave, Suite 1600
Cleveland, Ohio 44114-1151
Tel: (216) 830-6836
Fax: (216) 830-6807

*Attorneys for Plaintiff Midwest Industrial Supply, Inc.*




## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE AND CONSOLIDATE AND, IN THE ALTERNATIVE, MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY was filed electronically on this 7th day of August 2008

/s/ John M. Skeriotis
John M. Skeriotis

722952