IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Midwest Industrial Supply, Inc. | ) | CASE NO. 5:08CV 1374 |
| 1101 – 3rd St. S.E. | ) | |
| Canton, OH 44707 | ) | JUDGE OLIVER |
| | ) | MAGISTRATE JUDGE BAUGHMAN |
| | ) | |
| Plaintiff, | ) | **SOILWORKS LLC'S** |
| | ) | **REPLY TO MIDWEST'S OPPOSTION** |
| | ) | **TO SOILWORKS' LLC'S** |
| | ) | **MOTION TO DISMISS**, |
| | ) | **IN THE ALTERNATIVE, MOTION** |
| -vs.- | ) | **TO TRANSFER VENUE AND** |
| | ) | **CONSOLIDATE** |
| Soilworks, LLC, | ) | |
| 681 North Monterey Street | ) | |
| Suite 101 | ) | |
| Gilbert, Arizona 85233 | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant Soilworks, LLC, ("Soilworks"), offers the following Reply in Support of its Motion to Dismiss Plaintiff Midwest Industrial Supply, Inc.'s ("Midwest") Complaint against Soilworks in its entirety or, in the alternative, transfer venue pursuant to 28 U.S.C. § 1404(a) to consolidate this action with a pending action pursuant to Federal Rule of Civil Procedure 42. In support of this Motion, Soilworks states as follows:

**INTRODUCTION**

Midwest is wrongfully attempting to adjudicate, in a court lacking personal jurisdiction over Soilworks, claims that are (i) compulsory counterclaims in an action pending before the United States District Court for the District of Arizona and (ii) are impermissibly duplicative. Accordingly, Midwest's Complaint must be dismissed. In the alternative, the Complaint should be transferred to the United States District Court for the District of Arizona so that it may be

4841-3932-9794.1

consolidated with the pending action which addresses similar questions of law and fact arising from the same products, transactions and occurrences between the same parties.

## STATEMENT OF FACTS

### A. Additional Factual Background

1. In addition to five other nationwide locations, Midwest maintains an office in Phoenix, Arizona. A true and correct copy of Midwest's Nationwide Locations pursuant to the Midwest website accessed on August 20, 2008 is attached hereto as Exhibit 1.

2. On June 8, 2006, Midwest's outside counsel sent a letter to counsel for Soilworks ("June 8th Letter") asserting, among other things, that Midwest "fe[lt] that at least some of the claims in [our] two patent applications cited above could potentially affect your client's ability to make, use and sell Durasoil in the future . . . While no legal actions are contemplated by Midwest at this time, we ask you to kindly review the claims in the Applications, which are enclosed herewith . . .." A true and correct copy of the June 8th Letter is attached hereto as Exhibit 2. Midwest's outside counsel made no offer to negotiate a license with Soilworks. *Id.*

3. On July 18, 2006, Soilworks' counsel responded to Midwest outside counsel's June 8th Letter ("July 18th Letter"). In its July 18th Letter, Soilworks acknowledged receipt of the June 8th Letter and that it had reviewed the letter and the attached "Application." A true and correct copy of the July 18th Letter is attached hereto as Exhibit 3. Soilworks' counsel advised Midwest's outside counsel that "patent owners are required to conduct investigations and to map them to each element of an asserted patent claim." *Id.* Soilworks' counsel requested a copy of the appropriate claims chart from Midwest's outside counsel. *Id.*

4. On August 8, 2006, Midwest's outside counsel notified Soilworks that Midwest's Patents issued and both were attached for Soilworks' review ("August 8th Letter"). A true and correct copy of the August 8th Letter is attached hereto as Exhibit 4. Midwest's outside counsel again referenced its "investigation" of Soilworks' Durasoil product. *Id.* Midwest's outside counsel stated that Soilworks' "silence in responding provides us **assurances of our review,**

**that your client infringes**. **If Durasoil does not infringe the claims of Midwest's newly issued patents . . . then I ask that you contact me in that regard**." *Id*. (Emphasis added). Again, Midwest's outside counsel made no offer to negotiate a license. *Id*. Nor did Midwest's outside counsel comply with Soilworks' request for the required claims chart. *Id*.

5. In addition, Midwest contacted a Soilworks' customer and alleging patent infringement, Midwest made general claims to the trade of Soilworks' infringement ("Marketing Materials"). A true and correct copy of the Marketing Materials is attached hereto as Defendant's Exhibit 5. In its Marketing Materials, Midwest provided product literature entitled "Compare Midwest and Envirokleen to the Competition." *Id*. Again, Midwest specifically addressed Soilworks as an imitator of its products. "**Soilworks, LLC is an imitator** of synthetic organic dust suppressant technology." *Id*. In its promotional materials, Midwest further states that competitors, like Soilworks, are either not supplying "Synthetic Organic Dust Control" product or they are infringing:

> Others claiming to offer products similar to EnviroKleen [and] EK35 are either not supplying Synthetic Organic Dust Control or are infringing on Midwest Industrial Supply's patents. The granting of the U.S. Patent now allows Midwest to pursue those who make, use, sell, offer for sale and/or import knock-off or imitators infringing Midwest's technology.

*Id*.

6. In response to above-referenced communications regarding Durasoil® and Midwest's marketing materials regarding Durasoil®, Soilworks filed an action asserting, among other things: (i) that Soilworks' Durasoil® product did not infringe any Midwest patents; and (ii) that Midwest had disseminated false and/or misleading statements regarding both Midwest's products and Soilworks' Durasoil® product. *See* Soilworks' Motion to Dismiss Exhibit B, ¶¶ 8-17. The complaint filed in the Original Action requests, among other things, relief from Midwest's (i) false representations that Soilworks is infringing alleged patent rights of Midwest; (ii) *false representations that Midwest owns a proprietary position with regard to its products* which it does not, in fact, own; and (iii) the dissemination of marketing communications which are in any respect false, misleading and are intended to tarnish and diminish the substantial

goodwill Soilworks has cultivated with respect to its company, products *and Soilworks' proprietary rights associated therewith. Id*.

7. Midwest asserts in its Counterclaims that "Midwest has received U.S. Patent No. 7,074,266 and U.S. Patent No. 7,081,270 for its innovative soil stabilization and dust control technology, trademarked as "synthetic organic dust control™" but did not include such term as one of the subject marks. *See* Soilworks' Motion to Dismiss Exhibit C, ¶ 8. Midwest's patent technology is made available under the registered trademarks Envirokleen®, EK35®, Diamond Dr® and Arena Rx® (collectively, "Midwest's Products"). *Id*. Midwest averred that it did not license or authorize Soilworks to "use *any* of Midwest's Marks or its patented technology." *Id*. at ¶ 12. Midwest markets Envirokleen®, EK35®, Diamond Dr® and Arena Rx® under the mark "Synthetic Organic Dust Control®". A true and correct copy of Midwest's products pursuant to the Midwest website accessed on August 25, 2008 is attached hereto as Exhibit 6.

8. Additionally, Midwest alleged that "[i]n connection with the advertising and promotion of its soil stabilization and dust control agents, Soilworks has embarked on a scheme to trade upon and injure the substantial goodwill and . . . Soilworks has used Midwest's Marks in commerce in an attempt to divert sales and goodwill from Midwest, thereby causing confusion, mistake and/or deception as to the affiliation, connection, or association of Soilworks with Midwest, and/or the origin, sponsorship, or approval of Soilworks' products, services, or commercial activities from Midwest." *Compare* Soilworks' Motion to Dismiss Exhibit C ¶ 13, *with* Midwest Complaint ¶ 14.

9. Because Midwest failed to establish good cause for its untimely delay, Soilworks opposed its Motion for Order seeking leave to amend its answer and include "Synthetic Organic Dust Control®" which was filed after the close of discovery and eight months after the pleading-amendment deadline.[1] *See* Soilworks Motion to Dismiss Exhibit E.

---

[1] Midwest improperly asserts Soilworks to be disingenuous with regard to its request for consolidation because Soilworks opposed Midwest's late request for leave to amend its Answer and Counterclaims. As was noted by the court in the Original Action, Soilworks questioned Midwest during discovery about its failure to include said mark. Nonetheless, the opposition to Midwest's request for leave was opposed because it lacked good cause pursuant to Fed. Civ. R. 15 and not because Soilworks opposed the inclusion of "Synthetic Organic Dust Control." *See*

# ARGUMENT

## I. This Court Lacks Jurisdiction over Soilworks and, Therefore, Must Dismiss Midwest's Complaint.

This Court must dismiss Midwest's Complaint as it lacks the ability to exercise personal jurisdiction over Soilworks. For purposes of constitutional fairness,

> business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant *have a realistic impact on the commerce of that state*; and the defendant has purposefully availed himself of the opportunity of acting there if he *should have reasonably foreseen that the transaction would have consequences in that state*.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382-83 (6th Cir. 1968) (emphasis added). The Sixth Circuit has found that it is the quality not quantity of contacts that determines whether the contacts are sufficient to establish purposeful availment. *CompuServe, Inc. v. Peterson, 89 F.3d 1257*, 1265 (6th Cir. 1996). The operation of an internet website can only constitute purposeful availment if the website is "interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). "A growing body of law holds that a defendant has not purposefully availed itself of the privilege of doing business within the forum state, merely because it has web site on the Internet, which can be utilized by customers within that state to order products." *Rothschild Berry Farm v. Serendipity Group LLC*, 84 F.Supp.2d 904, 909 (S.D.Ohio 1999) (finding a website that affords the user the opportunity to exchange information with the host computer "(i.e., ordering products over the Internet)" to be active but insufficient as a basis for establishing purposeful availment). Accordingly, courts reject the "premise that

---

Soilworks Motion to Dismiss Exhibit E. Further, Midwest blatantly misstates the ruling of the court in the Original Action. The court did not determine that "Synthetic Organic Dust Control®" was "not an issue in the Arizona action based upon Soilworks' argument against inclusion." *See* Midwest Opposition. The Court found that: (i) Midwest could have included "Synthetic Organic Dust Control" at the time the Answer and Counterclaims were filed but failed to do so despite Midwest's assertion that the mark was included through notice pleading; (ii) Midwest could have freely amended within the prescribed period; or (iii) Midwest could have established good cause for its failure to do either of the foregoing options thereby allowing the Court to grant Midwest leave to amend its Answer and Counterclaims to include the subject mark. *See* Soilworks' Motion to Dismiss Exhibit D. Despite all of the options available to Midwest, the court held that Midwest failed to satisfy any one of its options and, therefore, was precluded from including the subject mark. *Id.*

personal jurisdiction can be based upon the existence of an interactive web site, alone. . . . [instead,] courts have examined the level of commerce between the defendant and customers in the forum state." *Id*.

Midwest failed to support any of its allegations that Soilworks has significant contacts with Ohio. The purchase invoices attached to Midwest's Opposition, Exhibits 1, 3, are for the sale of Durasoil® to be shipped to states other than Ohio. In fact, the only readily-apparent Durasoil® sample that appears to have been shipped to Ohio was done so for a total of ninety-five dollars ($95.00). *See* Midwest's Opposition, Exhibits 1, 3. While some invoices may list the client contact information as having an office in Ohio, the sale of Durasoil® was shipped to the California and, therefore, those sales certainly could not have been reasonably foreseen as having consequences within the State of Ohio. Another invoice shows payment was to be made to Soilworks by a company with an Ohio address but the agreement was with a customer in Philadelphia and Soilworks was to ship the products to that customer in Philadelphia. What is more, that purchase had nothing to do with Durasoil®.

The assertion that Soilworks "took out an advertisement in an Ohio-based magazine" is insufficiently supported by an agreement that actually provides for the running of an ad in the *national* magazine, *BMX Today Magazine*. Again, while the National Bicycle League, owner of the magazine, has an address in Ohio, the ad was to be included in the magazine for the national audience, generally, and that ad was run, at no cost for either party, in exchange for the shipping of Soilworks' goods to Kentucky, not Ohio.

Additionally, while Midwest attaches 'proof' of Soilworks accepting applications and extending lines of credit to Ohio companies, it is clear that said proof is, at best, flimsy. Midwest attaches several credit applications for companies with multiple offices that also have one located in Ohio. Only two applications were generated from Ohio addresses with the others being generated from Washington, Texas and Pennsylvania offices. Certainly it is not Midwest's contention that Soilworks purposefully availed itself of the laws of the State of Ohio because companies in other states, that happen to have an office in Ohio, submitted a credit application.

Midwest offers no evidence that said applications even resulted in lines of credit being extended to these companies.

Finally, with regard to Midwest's attempts to exaggerate Soilworks' contacts with Ohio by attaching emails and faxes, though it is not even clear those are generated from Ohio. As referenced above, several companies have multiple offices and may have on located in Ohio but that does not prove the communications are directed at Ohio. Further, such a distinction is of no consequence as it has already been established that the exchange of information does not create purposeful availment. *See Rothschild Berry Farm*, 84 F.Supp.2d at 909.

Cases cited by Midwest involved the repeated and continuous interaction between defendants and Ohio consumers with whom the defendants had contracted. Those cases are distinguishable from the circumstances in the instant matter. Midwest has only identified one sample, worth ninety-five dollars ($95.00), of Durasoil® having been shipped to an Ohio address and this sample is the basis of its claims. *See* Midwest Opposition, p. 11 ("These claims are based on the fact that Soilworks advertises and sells Durasoil® product in Ohio by using and, hence, infringing, Midwest's "Synthetic Organic Dust Control®" trademark."). This would not provide a sufficient basis to support the exercise of jurisdiction over Soilworks. Certainly, this shipment is not tantamount to purposeful availment. Midwest has failed to establish a concerted effort directed specifically toward the Ohio market or that Soilworks has subjected itself to the protection or benefit of the laws of the State of Ohio. It is doesn't even appear that Soilworks' activities qualify as "transacting business." The exercise of jurisdiction over Soilworks in this action would lack constitutional fairness. Accordingly, this Court must dismiss the present action.

II. **Midwest's Complaint Fails to State a Claim for Which Relief May be Granted and, Therefore, Should be Dismissed or, in the Alternative, Transferred for Consolidation with a Duplicative Original Action.**

    A.    <u>Because Midwest's Claims are Compulsory Counterclaims that must be Filed in the Original Action, Midwest's Complaint Should be Dismissed.</u>

The claims alleged in Midwest's Complaint are claims required to be raised as counterclaims in the Original Action and, therefore, this action should be dismissed. "A pleading must state as a counterclaim any claim—that *at the time of its service*—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .." Fed. R. Civ. P. 13(a) (emphasis added). This requirement is an effort to "prevent multiplicity of actions and achieve resolution in a single lawsuit of all disputes arising out of common matters." *Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc*., 347 F.3d 935, 938 (Fed. Cir. (Ohio) 2003) (finding plaintiff's claim to be a compulsory counterclaim in the previous litigation and affirming the district court's decision to bar plaintiff from asserting it again). Rule 13(a) "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Id*.; *see also Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962) (same); 6 Fed. Prac. & Proc. Juris. 2d § 1417 (2008) ("failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim.").

The Sixth Circuit deems a claim compulsory if a "'logical relationship [exists] between the claim and counterclaim.'" *Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc*., 138 F.R.D. 89, 91 (N.D. Ohio 1991) (*quoting Maddox v. Kentucky Finance Co*., 736 F.2d 380, 382 (6th Cir. 1984). Though analyzing whether claims were compulsory under the Ohio Rules of Civil Procedure which, like this Court, applies the "logical relationship" test, this Court found "multiple claims [to be] compulsory counterclaims where they involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Keith A. Keisser Ins. Agency, Inc., v. Nationwide Mut. Ins. Co*., 246 F.Supp.2d 833, 835 (N.D.Ohio 2003) (claims were logically related when the "individual claims whether state or federal, contract or tort, common law or statutory, arise from that relationship and share a common core.") (citations omitted); *see also, Meritage Homes Corp. v. Hancock*, 522 F.Supp.2d 1203, 1213 (D.Ariz. 2007) ("The allegations comprising the

defenses raised in this litigation are virtually the same as those supporting the claims raised in arbitration . . . [this fact] supports the Court's conclusion that [the] claim was a compulsory counterclaim.") (citations omitted); *Vivid Technologies, Inc. v. American Science Engineering, Inc.*, 200 F.3d 795, 801-02 (Fed. Cir. 1999) ("an infringement counterclaim is compulsory in an action for declaration of noninfringement.").[2]

In what appears to be an attempt to distract this Court from Midwest's failure to appropriately raise this claim in the Original Action, Midwest tries to prove this claim is not "logically related" to those in the Original Action by propounding the different elements required to prove trademark infringement as opposed to patent infringement. Despite stating the obvious, Midwest conveniently neglects to address the underlying facts giving rise to the Original Action, which are the relevant factors when ascertaining whether or not a counterclaim is compulsory. *See Keith A. Keisser Ins. Agency, Inc.,* 246 F.Supp.2d at 835 ("The difference in the nature of the actions is not paramount . . . rather, the issue is whether two claims have a sufficient legal or factual nexus to satisfy the logical-relation test.") (citations omitted).

In addition to Soilworks' declaratory action seeking noninfringement of Midwest's patents asserted in the Original Action, Soilworks also sought to enjoin Midwest from *false representations that Midwest owns a proprietary position with regard to its products* including Durasoil®. It seems wrong to assert these actions are unrelated when, in the Original Action, Midwest has counterclaimed, among other things, that Soilworks' Durasoil® is infringing the Midwest patent technology available under the registered trademarks Envirokleen®, EK35®, Diamond Dr® and Arena Rx® and, in this action, assert that the mark under which Envirokleen®, EK35®, Diamond Dr® and Arena Rx® are marketed, "Synthetic Organic Dust Control®," is being infringed by Soilworks' Durasoil®. Put another way, the Original Action demands that Soilworks defend against the simultaneous claims that Durasoil® is: (i) infringing

---

[2] Midwest's assertion, that "the *only* compulsory counterclaim for a declaration of *patent* noninfringement is a claim of *patent* infringement," is simply incorrect. *Compare* Midwest Opposition *with Instrument Co. v. Sigma Engineering Service, Inc*., 42 F.R.D. 416 (W.D.Pa. 1967) (finding compulsory a claim seeking royalties in a suit for a declaratory judgment for noninfringement and invalidity of a patent license).

Midwest's patent technology; and (ii) infringing the trademarks under which that patent technology is available when all of those trademarks are collectively marketed under the mark "Synthetic Organic Dust Control®." *See* Soilworks' Motion to Dismiss Exhibit C ¶ 8; Midwest Complaint, ¶ 7; Midwest Products, Ex. 6. And, in the instant action, Soilworks will be required to defend against the claim that Durasoil® infringes the mark "Synthetic Organic Dust Control®."

Both actions involve the same parties, the same products, patents, marks, actions, transactions and occurrences. As is evidenced by the motions filed in this action, the evidence used in both cases will be substantially the same.[3] Midwest alleged the same claims against Soilworks in both actions, notwithstanding the exclusion of one mark in the Original Action which is the only mark underlying this action. *Compare* Soilworks' Motion to Dismiss Exhibit C ¶ 13 *with* Midwest Complaint ¶ 14.

Though Midwest asserts a distinction exists between both actions, such a distinction is not readily apparent. The Original Action and this action are materially on all fours and, therefore this action is impermissibly duplicative.[4] For instance, per Midwest's Supplemental Pleadings[5], the court in the Original action must determine, among other things, whether Midwest is the exclusive source of "Synthetic Organic Dust Control®." That determination, at best, will leave very little or nothing at all to be determined in this action. *See Cinemark USA, Inc.*, 66 F.Supp.2d at 885.

This action is neither distinct nor novel in the transactions and occurrences giving rise to it, rather, this action is merely an attempt to remedy Midwest's failure to include "Synthetic

---

[3] The evidence used this action will be substantially the same as that required in the Original Action as evidenced by Midwest's use , in its Opposition, of documents obtained, under protective order, during discovery in the Original Action. Additionally, all the facts, assertions and averments contained in paragraphs 1-10, *supra*, were pled or asserted in the Original Action and provide the basis for the claims and/or defenses in the Original Action

[4] "A duplicative suit is one that is 'materially on all fours with the other' and has such an identity of issues 'that a determination in one action leaves little or nothing to be determined in the other.'" *Cinemark USA, Inc.*, 66 F.Supp.2d at 885 (*quoting Smith v. Securities and Exchange Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997)).

[5] Midwest's Notice of Supplemental Pleading incorrectly characterizes its attachment, Exhibit B, as the "final pretrial order" in the Original Action. It is actually the Order Setting the Final Pretrial Conference. Further, Midwest improperly refers to the Original Action court as the Northern District of Arizona. The Original Action is pending before the United States District Court for the District of Arizona.

Organic Dust Control®" with the over ten trademarks that are the basis of alleged infringement in the Original Action. [6] Accordingly, Midwest's Complaint must be dismissed as it is a compulsory counterclaim that must be addressed in the Original Action. *Keith A. Keisser Ins. Agency, Inc.,* 246 F.Supp.2d at 835.

> 1. *Midwest must not circumvent a court order by filing an action in another jurisdiction.*

Midwest filed for leave to amend its answer to counterclaim trademark infringement of the term "Synthetic Organic Dust Control" in the Original Action and that court denied the same because Midwest failed to establish good cause. *See* Soilworks' Motion to Dismiss Exhibit F. Therefore, the only avenue available to Midwest is to appeal that decision in the Original Action. "[A]n order that denies leave to amend the pleadings to advance an additional part of the claim . . . . bars a second action on the part excluded from the first action . . . [a]ny error should be corrected by appeal in the first proceeding." 18 Fed. Prac. & Proc. Juris. 2d § 4412 (2008); *see also Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1334 (10th Cir. 1988) ("a court's denying leave to amend does not eliminate the possibility of claim preclusion as to untimely issues excluded." ); *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982) (finding it within the discretion of the court to deny a motion for leave to amend in the first action and that such denial supported claim preclusion); *Restatement (Second) of Judgments* § 25 comment b ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment. It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."). Midwest failed to address the above

---

[6] Midwest continues to assert that it could not have included this term as a subject mark until it became federally registered despite the abundance of well established case law that directly contradicts this position. The United States Supreme Court has unequivocally held that "it is common ground that § 43(a) [of the Lanham Act] protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Moreover, Midwest's failure to understand the law should not be a burden visited upon Soilworks with a separate and duplicate action.

argument in its Opposition and, therefore, appears to have conceded the point. Consequently, this Court must dismiss Midwest's Complaint as barred by the court's determination in the Original Action leaving Midwest only the opportunity to appeal the same.

      B.      <u>In the Alternative, Venue Should be Transferred for Consolidation with the Original Action</u>**.**

This action should be transferred to the United States District Court for Arizona so that it may be consolidated with a pending action. "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. DuPont de Nemours & Company v. Diamond Shamrock Corporation*, 522 F.Supp. 588, 592 (D.Del. 1982). "[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Company*, 494 U.S. 516, 531 (1990) (citations omitted). Accordingly, the existence of related litigation in a transferee court *strongly* weighs in favor of transfer. *See Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528-29 (5th Cir. 1988).

Further, the "[p]iecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court." *Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.*, 728 F.Supp. 6, 7 (D.D.C. 1989); *Datatreasury Corporation v. First Data Corporation*, 243 F.Supp.2d 591, 594 (N.D.Tex. 2003) (same). Such cases dictate transfer to avoid "an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *General Tire & Rubber Company v. Watkins*, 373 F.2d 361, 362 (4th Cir.), *cert. denied*, 386 U.S. 960 (1967).

In the instant matter, Midwest's Complaint addresses the same parties, facts, products, patents, registrations, events, transactions and occurrences as those in the Original Action. This action is being advanced merely as Midwest's second bite at the apple because it failed to

include "Synthetic Organic Dust Control" as one of the more than ten other marks it alleges were being infringed in the Original Action. The claims in the Original Action all seek to resolve questions of noninfringement and/or patent or trademark infringement, unfair practices, tortious interference and misappropriation of goodwill and false representations under the Lanham Act based on the same actions, products, parties, registrations, marks and patents. This action creates an "undesirable" situation whereby Midwest is attempting to litigate "related patent and trademark infringement claims" in different courts. *See Smiths Industries Medical Systems, Inc.* 728 F.Supp. at 7.

Not only does this action present this Court with piecemeal litigation that will prove to be an extravagant waste of judicial resources, but the parties, potential witnesses and evidence required to defend this claim are substantially similar, if not identical, to that required in the Original Action. To maintain this action would be to require the participation in two separate actions of both parties, all potential witnesses and force those, already present in Arizona, to travel to Ohio to offer the same evidence. Though Midwest asserts that its relevant documents and witnesses are located in Ohio, however, it conveniently omits that also maintains an office in Phoenix, Arizona. *See* Midwest's Nationwide Locations, Ex. 1.

Further, system integrity dictates that Midwest be estopped from collaterally attacking a judgment by attempting to correct its failure in one action with the advancement of a separate action based on the same events, products, parties and claims. As best can be gleaned from Midwest's Supplemental Pleading, Midwest's additional arguments in opposition to transfer are: (1) discovery has closed in the Original Action; (2) consolidation is hypothetical because the decision is up to the Original Action court and the Original Action is at a separate stage of litigation; and (3) the Original Action court has already refused to add the claims.

Midwest's opposition to consolidating this claim because discovery has closed in the Original Action and the varying stages of litigation is illogical for several reasons. Midwest's current opposition is counterintuitive because (i) the same evidence will be used in this action as the Original Action—additional discovery in this action would only yield what Midwest was

already provided in the Original Action; and (ii) Midwest already attempted to add these additional claims with regard to "Synthetic Organic Dust Control®" in the Original Action---*after the close of discovery*. To claim now that consolidation would be problematic is absurd given the fact that Midwest attempted to add these claims to the Original Action less than two months prior to filing this action and only filed this action as a result of its failure to add these claims in a timely manner.

Moreover, consolidation will not "add the claims from this case" to the Original Action as Midwest surmises. Rather, both actions remain separate and are consolidated so that one court may hear all the evidence and decide both cases. *See Johnson v. Manhattan Ry.,* 289 U.S. 479, 496-97 (1933) ( "consolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.") *see also United States v. Altman,* 750 F.2d 684, 695 (8th Cir.1984) (consolidated suits maintain their separate identities); *Kraft, Inc. v. Local Union 327, Teamsters,* 683 F.2d 131, 133 (6th Cir.1982) (same). Midwest's hesitation to put before the Arizona District Court a transferred action based on the same claims it failed to timely assert in the Original Action is understandable, however, that hesitation is an insufficient basis to oppose transfer and is most certainly an improper basis to sustain this action. Accordingly, this action must be dismissed or, in the alternative, transferred so that it may be consolidated with the Original Action.

**WHEREFORE**, Defendant Soilworks respectfully requests that the Court issue an order dismissing Midwest's Complaint in its entirety on the grounds that Midwest fails to allege facts to state a claim against Soilworks for which relief can be granted and because this Court lacks personal jurisdiction over Soilworks. In the alternative, Soilworks respectfully requests that venue in this action be transferred to the United States District Court for the District of Arizona, where it may be consolidated with the previously filed and currently pending proceedings.

Respectfully submitted this 25th day of August, 2008.

KUTAK ROCK LLP


      /s E. Scott Dosek
E. Scott Dosek (AZBN #012114)
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253
Telephone: (480) 429-5000
Facsimile: (480) 429-5001
Scott.dosek@kutakrock.com

**LOCAL COUNSEL:**
Elizabeth A. Ratliff (#0075673)
VORYS, SATER, SEYMOUR AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH 44114
Telephone: (216) 479-6103
Facsimile: (216) 937-3737
earatliff@vorys.com
*Attorneys for Defendant Soilworks, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2008, the foregoing "Soilworks LLC's Reply to Midwest's Opposition to Soilworks' Motion to Dismiss, in the alternative, Transfer Venue" was filed electronically. Notice of this filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                                          /s Amy S. Fletcher